UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| J GIORDANO SECURITIES LLC d/b/a ) | | |
| J GIORDANO SECURITIES GROUP ) | | |
| ) | | |
| **Plaintiff** ) | Civil Action No: 3:06-CV-1415 (JCH) | |
| ) | | |
| - vs - ) | | |
| ) | | |
| CALVERT GROUP, LTD., CALVERT ) | | |
| ASSET MANAGEMENT COMPANY, ) | | |
| INC., CALVERT SOCIAL INVESTMENT ) | | |
| FUND, and CALVERT VARIABLE ) | October 20, 2006 | |
| SERIES, INC. ) | | |
| ) | | |
| **Defendants** ) | | |

## ANSWER AND COUNTERCLAIMS

Defendants Calvert Group Ltd., Calvert Asset Management Company, Inc. ("Calvert"), Calvert Social Investment Fund, and Calvert Variable Series, Inc. (collectively, "Defendants"), by and through their undersigned counsel, hereby answer the Complaint of Plaintiff J Giordano Securities LLC ("Plaintiff") in the above action and assert their Affirmative Defenses. In addition, Counterclaim-Plaintiffs Calvert Social Investment Fund and Calvert Variable Series, Inc. assert their Counterclaims against J Giordano Securities LLC. All allegations not specifically admitted herein are denied by Defendants.

## ANSWER

Defendants respond to the numbered paragraphs of the Complaint as follows:

1.   Defendants lack information sufficient to form a belief as to the truth of the averment contained in Paragraph 1.

2. Defendants admit the allegations contained in Paragraph 2 of the Complaint.

3. Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4. Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5. Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6. Defendants admit that Calvert Variable Series, Inc. is incorporated in the State of Maryland and has its principal place of business at 4550 Montgomery Avenue, Bethesda, Maryland 20814. Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

7. Defendants aver that Paragraph 7 of the Complaint sets forth legal conclusions that Defendants need neither admit nor deny.

8. Defendants admit that they transact business in the District of Connecticut. To the extent the allegations in Paragraph 8 of the Complaint constitute conclusions of law, they are neither admitted nor denied. The remainder of Paragraph 8 is denied.

9. Defendants aver that Paragraph 9 of the Complaint sets forth a legal conclusion that Defendants need neither admit nor deny. Defendants deny the allegation that a substantial part of the events giving rise to Plaintiff's claims occurred in this District. The remainder of Paragraph 9 is denied.

10. Defendants aver that Paragraph 10 of the Complaint merely sets forth a description of Plaintiff's claims to which Defendants need not respond. To the extent a further response is required, Defendants deny the allegations contained in Paragraph 10.

11. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11.

12. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

13. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13.

14. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 16.  With respect to the second sentence of Paragraph 16, Defendants state that, consistent with an agreement between the issuer and bondholders, the Maryland State Economic Development Corporation Revenue Rocky Gap Bonds ("Rocky Gap Bonds") have not paid interest since late 2003.  Defendants deny that the Rocky Gap Bonds had not paid interest in approximately four (4) years.  Defendants lack sufficient knowledge or information to admit or deny the remainder of the second sentence of Paragraph 16.

17. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 18. With respect to the second sentence of Paragraph 18, Defendants state that, consistent with an agreement between the issuer and bondholders, the Rocky Gap Bonds have not paid interest since late 2003. Defendants deny that the Rocky Gap Bonds had not paid interest in approximately four (4) years. Defendants lack sufficient knowledge or information to admit or deny the remainder of the second sentence of Paragraph 18.

19. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19.

20. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20.

21. Defendants admit that three investment company portfolios managed by Calvert held a total of five thousand Rocky Gap Bonds on August 28, 2006. The remainder of Paragraph 21 is denied.

22. Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23. Defendants aver that Paragraph 23 of the Complaint sets forth legal conclusions that Defendants are not called upon either to admit or deny.

24. Defendants admit that a Calvert employee sent wiring instructions to a representative of Plaintiff regarding the purchase of Rocky Gap Bonds held by two investment companies managed by Calvert on August 28, 2006. Defendants also admit that the documents attached to the Complaint as Exhibit 1 reflect communications between Calvert and Plaintiff on

August 28, 2006 and August 29, 2006. Defendants deny that the parties agreed that the Rocky Gap Bonds would be sold to Plaintiff for a price of $645 per bond "flat" (i.e., without accrued interest). Defendants also deny that the wiring instructions sent by Calvert to Plaintiff were in furtherance of any such agreement. The remainder of Paragraph 24 is denied.

25.     Defendants admit that Plaintiff apparently reported a transaction via the MSRB computer system, as reflected in Exhibit 2 to the Complaint. The remainder of Paragraph 25 is denied.

26.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26.

27.     Defendants admit that, on August 29, 2006, representatives of Calvert and representatives of Plaintiff discussed an "internal error" and apparent miscommunications between the parties regarding whether the sale of the Rocky Gap Bonds included accrued interest. Defendants deny that they sought to rescind any "agreement," and state that, to the extent the parties reached agreement on August 28, 2006 regarding the sale of the Rocky Gap Bonds, Plaintiff and Defendants agreed that Plaintiff would purchase the bonds for a price of $645 per bond, plus accrued interest. The remainder of Paragraph 27 is also denied.

28.     Defendants admit that Greg Habeeb, a Calvert portfolio manager, spoke with representatives of Plaintiff on August 29, 2006. Defendants also admit that Mr. Habeeb informed Plaintiff that Defendants had only agreed to sell the Rocky Gap Bonds for a price that included the accrued interest. Defendants deny that Mr. Habeeb made any statement to the effect that Defendants would not perform an "agreement." The remainder of Paragraph 28 is denied.

29.     Defendants admit that Plaintiff sought to cause Defendants to sell the Rocky Gap Bonds for a price of $645 per bond "flat" (i.e., without accrued interest) and that Plaintiff contended that Defendants agreed to do so, but Defendants specifically deny any such agreement.  Defendants deny that they failed to honor any obligation to Plaintiff.  The remainder of Paragraph 29 is also denied.

30.     Defendants deny that they repudiated any "contractual obligation" to deliver Rocky Gap Bonds to Plaintiff.  Defendants agreed to sell the Rocky Gap Bonds to Plaintiff for a price that included accrued interest.  Defendants admit that, on August 29, 2006, Mr. Habeeb discussed with Plaintiff's representatives apparent miscommunications between the parties regarding the terms of the trade.  The remainder of Paragraph 30 is denied.

31.     Defendants admit that a trade settlement was scheduled for August 31, 2006.  The remainder of Paragraph 31 is denied.

32.     Defendants admit that they did not deliver the Rocky Gap Bonds to Plaintiff on August 31, 2006, but deny that they had any obligation to do so because Plaintiff has refused to pay the accrued interest on the Rocky Gap Bonds.  The remainder of Paragraph 32 is denied.

### COUNT I
(**Breach of Contract — Specific Performance**)

33.     With respect to the allegations contained in Paragraph 33 of the Complaint, Defendants incorporate by reference their responses to Paragraphs 1 through 32, above.

34.     Defendants deny that they entered into "the Agreement" as set forth by Plaintiff.  The remainder of Paragraph 34 is also denied.

35. Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36. Defendants deny that the parties reached an agreement for the sale of the Rocky Gap Bonds "flat" (i.e., without the accrued interest) and assert that they agreed to sell the Rocky Gap Bonds to Plaintiff for a price of $645 per bond, plus accrued interest. Defendants state that Plaintiff has refused to purchase the Rocky Gap Bonds at the agreed-upon price. The remainder of Paragraph 36 is denied.

37. Defendants admit that the Rocky Gap Bonds are part of a limited offering and that there apparently are only a few holders of the Rocky Gap Bonds. Defendants deny the remainder of the allegations contained in Paragraph 37.

38. Paragraph 38 of the Complaint sets forth a legal conclusion that Defendants need neither admit nor deny. To the extent a further response is required, the allegations contained in Paragraph 38 are denied.

39. Defendants deny the allegations contained in Paragraph 39 of the Complaint.

## COUNT II
(**Breach of Contract — Money Damages**)

40. With respect to the allegations contained in Paragraph 40 of the Complaint, Defendants incorporate by reference their responses to Paragraphs 1 through 36, above.

41. Defendants deny the allegations contained in Paragraph 41 of the Complaint.

## COUNT III
(**Promissory Estoppel**)

42. With respect to the allegations contained in Paragraph 42 of the Complaint, Defendants incorporate by reference their responses to Paragraphs 1 through 36, above.

43. Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44. Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45. Defendants deny the allegations contained in Paragraph 45 of the Complaint.

## COUNT IV
### (Breach of the Covenant of Good Faith and Fair Dealing)

46. With respect to the allegations contained in Paragraph 46 of the Complaint, Defendants incorporate by reference their responses to Paragraphs 1 through 36, above.

47. Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48. Defendants deny the allegations contained in Paragraph 48 of the Complaint.

## AFFIRMATIVE DEFENSES

49. Plaintiff has failed to state a claim upon which relief can be granted.

50. To the extent Plaintiff has sustained damages for which it seeks relief, all such damages are a result of acts or omissions by Plaintiff or its representatives, or Plaintiff's own negligence or want of care.

51. Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has failed to mitigate damages.

52. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

53. Plaintiff's claim for equitable relief is barred because Plaintiff has an adequate remedy at law.

54. Plaintiff has failed to allege a basis for recovery of punitive damages.

## COUNTERCLAIMS

Counterclaim-Plaintiffs Calvert Social Investment Fund and Calvert Variable Series, Inc. assert the following Counterclaims against J Giordano Securities LLC.

### Facts Common to Both Counterclaims

1. Calvert Group Ltd. ("CGL") is a Delaware corporation with a principal place of business located at 4550 Montgomery Avenue, Bethesda, Maryland 20814. Calvert Asset Management Company, Inc. ("Calvert") is a subsidiary of CGL and a registered investment adviser. Calvert manages the assets of a "family" of mutual funds and variable insurance products, which includes Counterclaim-Plaintiff Calvert Social Investment Fund and Counterclaim-Plaintiff Calvert Variable Series, Inc. (collectively, the "Funds").

2. J Giordano Securities LLC ("J Giordano") is a Delaware limited liability company with a principal place of business located at 1234 Summer Street, Stamford, Connecticut 06901. Upon information and belief, J Giordano is also a registered broker-dealer.

3. On August 28, 2006, the Funds held collectively four thousand five hundred 8.625% Maryland State Economic Development Corporate Revenue Rocky Gap Bonds, due on October 1, 2019 and identified by CUSIP number 574205BVI (the "Rocky Gap Bonds"). Another mutual fund portfolio managed by Calvert owned an additional five hundred of the Rocky Gap Bonds.

4.  On August 28, 2006, at approximately 10 a.m., J Giordano agent Evan Schwartzberg contacted Calvert representative Patrick Faul and offered to buy all five thousand (5,000) of the Rocky Gap Bonds held by Calvert's clients.

5.  After some discussions, Calvert, as agent for the Funds, and J Giordano entered into an agreement under which J Giordano would buy from the Funds four thousand five hundred (4,500) Rocky Gap Bonds at $645 per bond with interest accrued, for a total purchase price of approximately $4,102,500.

6.  Following those discussions, Calvert transmitted to J Giordano on August 28, 2006 wiring instructions in furtherance of the sale of the Rocky Gap Bonds at a price of $645 per bond, plus accrued interest.

7.  The bond trade was scheduled to settle on August 31, 2006.

8.  On August 28, 2006 at approximately 10:42 a.m., J Giordano sought to alter the agreement by changing the contract terms to a "flat" purchase of the Rocky Gap Bonds. Under a "flat" purchase, J Giordano would not pay the accrued interest, thereby depriving the Funds of approximately $1,200,000 in accrued interest. Mr. Schwartzberg, the J Giordano agent who made the agreement with Calvert and the Funds, admitted that he had not stated during negotiations that J Giordano sought to purchase the Rocky Gap Bonds "flat," but he later urged Calvert and the Funds to sell the Rocky Gap Bonds "flat."

9.  On August 29, 2006, Greg Habeeb, a Calvert portfolio manager, informed J Giordano that Calvert would not sell the Rocky Gap Bonds "flat." Mr. Habeeb told J Giordano

that Calvert had agreed to sell the Rocky Gap Bonds only for a price that included the accrued interest.

11. 10. On August 29, 2006, J Giordano repudiated the contract terms, and J Giordano representative Bob Grimm expressed to Calvert that he believed the parties had miscommunicated regarding the bond purchase transaction and that everyone was "sorry that it happened."

11. On the settlement date, August 31, 2006, J Giordano wilfully and maliciously failed and refused to purchase the Rocky Gap Bonds at the agreed-upon price of $645 per bond, plus accrued interest.

## COUNTERCLAIM I
### (Breach of Contract—Monetary Damages)

12. The Funds repeat and incorporate by reference the allegations of Paragraphs 1 through 11 of the Counterclaim.

13. J Giordano and the Funds entered into a contract for the sale of the Rocky Gap Bonds held by the Funds for a purchase price of $645 per bond, plus accrued interest. The Funds performed their obligations under the contract and stood ready to deliver the bonds at the scheduled settlement. J Giordano materially breached that contract by failing to honor the agreed-upon purchase price and to execute the agreed trade.

14. As a result of the aforementioned conduct by J Giordano, the Funds have suffered damages in an amount to be proven at trial.

## COUNTERCLAIM II
### (Breach of the Covenant of Good Faith and Fair Dealing)

15.     The Funds repeat and incorporate by reference the allegations of Paragraphs 1 through 11 of the Counterclaim.

16.     An implied covenant of good faith and fair dealing existed with respect to the agreement by J Giordano to purchase the Rocky Gap Bonds from the Funds for a price of $645 per bond, plus accrued interest.

17.     By engaging in the aforementioned conduct, including refusing to pay the Funds accrued interest and seeking to cause the Funds to agree to sell the Rocky Gap Bonds "flat," J Giordano breached its covenant of good faith and fair dealing.  As a result of that breach, the Funds have suffered damages.

## PRAYERS FOR RELIEF

WHEREFORE, Defendants request that this Court dismiss with prejudice the claims asserted by Plaintiff.  Counterclaim-Plaintiffs Calvert Social Investment Fund and Calvert Variable Series, Inc. further request that this Court enter judgment in favor of the Funds and against J Giordano and that the Funds be afforded the following relief:

1.     An order requiring J Giordano to honor and pay to the Funds the agreed-upon purchase price for the Rocky Gap bonds of $645 per bond with interest accrued, for a total purchase price of $4,102,500;

2.     Punitive damages;

3. The costs of this action;

4. Attorneys' fees; and

5. Such other and further relief as is just and proper.

## **DEMAND FOR TRIAL BY JURY**

Defendants and Counterclaim-Plaintiffs hereby request a trial by jury as to all issues so triable raised by the Complaint and Counterclaims.

        Respectfully submitted,

        DEFENDANTS CALVERT GROUP LTD.,
        CALVERT ASSET MANAGEMENT COMPANY,
        INC., CALVERT SOCIAL INVESTMENT FUND,
        AND CALVERT VARIABLE SERIES, INC.


By:   /s/Alfred U. Pavlis
     Alfred U. Pavlis (ct08603)
     Daly & Pavlis, LLC
     107 John Street
     Southport, Connecticut 06890
     Telephone: (203) 255-6700
     Facsimile: (203) 255-1953
     Email: apavlis@dalypavlis.com

     Stephen G. Topetzes
     Bethany M. Nikfar
     Kirkpatrick & Lockhart Nicholson Graham LLP
     1601 K Street, N.W.
     Washington, DC 20006
     (202) 778-9328
     (202) 778-9100 (fax)

- 14 -

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2006, a copy of foregoing Answer and Counterclaims was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/Alfred U. Pavlis
Alfred U. Pavlis (ct08603)
Daly & Pavlis, LLC
107 John Street
Southport, Connecticut 06890
Telephone: (203) 255-6700
Facsimile: (203) 255-1953
apavlis@dalypavlis.com